**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HADJA FRANKLIN,** | : | **Civil No. 1:16-CV-977** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.     Introduction

Social Security appeals frequently entail review of an Administrative Law Judge's assessment of competing medical opinion evidence. So it is in this case. In the instant case we are called upon to review a decision by a Social Security Administrative Law Judge (ALJ) that engaged in a fundamental form of legal and factual analysis that is commonplace in Social Security appeals: the weighing of competing medical opinion evidence. In this case, the ALJ reviewed the medical opinions of two treating physicians, both of whom concluded that Ms. Franklin was disabled, in large part because she was severely limited in the use of her right, dominant, hand for overhead reaching. (Tr. 471-78, 489-93.) The conclusions of these two treating physicians were echoed by a consulting, examining doctor, who

1

also concluded that Franklin could never use her right hand for reaching overhead or otherwise. (Tr. 400-05.) Thus, every medical professional who treated or examined Franklin concluded that she was severely impaired in terms of the use of her right, dominant hand to reach overhead.

This was a significant medical finding in this case since the vocational expert who testified at Franklin's administrative hearing, stated that if Franklin could not reach overhead with her right dominant hand she would be unable to perform any of the jobs which the expert had identified in the national economy. (Tr. 87-8.) Thus, the vocational expert's testimony made this particular impairment work preclusive on this record.

Confronted with this unanimity of opinions among the physicians who had actually treated and examined Franklin, the ALJ discounted all of these opinions in favor of the views expressed by a non-examining medical source. (Tr. 90-98.) That non-examining source opined that Franklin was not disabled, while acknowledging that she had some limitations in the use of her right arm. The non-examining source did not discuss these right, dominant hand limitations, and did not address the findings of Franklin's treating and examining medical sources, since this initial opinion preceded at least one of the more thorough analyses

conducted by treating and examining physicians and was rendered without the benefit of all of these subsequent examinations and treating source analyses.

On these facts we find that the ALJ has not adequately explained why the opinion of a non-treating, non-examining source which did not take into account the material fact that every doctor who has examined Franklin concluded that she faced severe right dominant hand limitations is entitled to greater weight that these more fully-informed opinions based upon treatment and examination of the plaintiff. Therefore, we will order this cased remanded to the Commissioner for further consideration of this matter in light of this opinion.

## II.    <u>Statement of Facts and of the Case</u>

Hadja Franklin applied for Social Security Disability Insurance Benefits on May 12, 2014, alleging disability since November 29, 2012. Franklin, who was 43 years old at the time of the alleged onset of her disability, had a college education, (Tr. 48-49.), was previously employed as a surgical technologist, and reported that she was unable to work after November 29, 2012, when she suffered a shoulder injury during a mishap in the operating room. (<u>Id</u>.)

A pivotal issue in the course of this disability adjudication was the degree to which Franklin's injuries restricted her use of her dominant right hand. On this score, the medical record seemed to reveal a near unanimity of opinion supporting

the view that Franklin's dominant right hand use was severely impaired due to her injury. These opinions came from both treating, and independent examining sources.

At the outset, Dr. Ainsworth Allen, Franklin's treating orthopedic surgeon opined that she was very limited in the use of her right hand based upon nearly two years of treatment and examination of the plaintiff. This treatment began on February 5, 2013, when Franklin presented to Dr. Allen on with complaints of right shoulder pain following her November 2012 work-related injury. Since that injury Franklin had experienced persistent pain and stiffness in her right upper extremity which she rated at a level of 9 out of 10. Two months of physical therapy had not significantly improved her symptoms and examination revealed positive impingement signs. (Tr. 264.) MRI scans showed evidence of a torn superior labrum and thickening of the inferior capsule. Based upon his examination and treatment Dr. Allen opined that most of Franklin's symptoms were coming from adhesive capsulitis status post labral tear and recommended surgery which was performed on April 18, 2013. (Tr. 265, 272-273.)

Post-operatively, Franklin continued to experience pain, stiffness and limitations in the use of her right arm. In June 2014, Dr. Robert Griffin, Franklin's pain management specialist, who treated her extensively between 2012 and 2014,

opined that Franklin's "persistent unremitting" right shoulder pain was predominantly associated with myofascial spasm and observed that Franklin "continues to exhibit marked limitation in the use of right shoulder that is limiting of her routine activities." (Tr. 333.)

On June 24, 2014, Dr. Allen completed a Upper Extremity Assessment form which described his clinical findings concerns Franklin's limitations in the use of her right, dominant arm. (Tr. 471-78.) Dr. Allen explained that Franklin had "a frozen right shoulder and she has restricted movement in the right shoulder." (Tr. 477.) According to Dr. Allen, in an eight-hour workday, Franklin could never or rarely lift and carry objects as light as five pounds and could never or rarely use her right hand and arm to handle objects, perform fine manipulations, push or pull, or reach overhead or laterally. (Tr. 476.) Dr. Allen also stated that Franklin's impairments were expected to last 12 months, and found that she was not a malingerer. Dr. Allen further opined that Franklin's symptoms would increase if she was placed in a competitive work environment. (Tr. 477.) According to Dr. Allen, during an eight-hour workday, Franklin would need to rest for at least 15 minutes every hour and would be likely to be absent from work two to three days a month. (Id.)

Dr. Allen's opinions regarding the severity of Franklin's right arm limitations were echoed by a second treating source, Dr. Elizabeth Karazim-Horchos. Franklin began treating with Dr. Horchos on June 18, 2015, when she saw the doctor for treatment of complaints of cervical, neck and right shoulder pain following her November 2012 injury. Franklin sought advice about diminishing her pain and improving her function and reported that, despite surgery, 12 weeks of physical therapy, multiple trigger point injections, and medication, she still experienced a great deal of posterior scapular and shoulder area pain with occasional numbness/tingling into her arm. Her pain was 4-8/10 and worse with lifting, bending, and driving and she reported that she needed assistance for dressing, bathing, cleaning, and driving. (Tr. 502-503.)

Dr. Karazim-Horchos continued to examine and treat Franklin through the Summer and Fall of 2015, documenting medical complications with her right shoulder including: cervicalgia; brachial radiculitis; spasm; CTS; and a shoulder disorder. (Tr. 503-504.) Consequently, on an assessment form dated October 21, 2015, Dr. Karazim-Horchos stated that she has been treating Franklin since June 2015 for pain in her right shoulder joint, spasm, torsion dystonia, bursae and tendon disorders, calcifying shoulder, tendinitis, cervicalgia, and adhesive capsulitis. The doctor, who reviewed the notes/records of Franklin's other treating

6

doctors, opined that her impairments were expected to last at least 12 months and that she was not a malingerer. (Tr. 489, 493.) Dr. Karazim-Horchos further opined that Franklin could not lift even five pounds with her right arm and she could sit and stand or walk for a total of less than one hour each in an eight-hour workday. According to the doctor, Franklin could frequently use her left non-dominant hand for reaching performing fine manipulations and grasping, turning or twisting objects. While the doctor felt that Franklin could occasionally use her right hand to grasp, turn and twist objects and perform fine manipulations, the doctor concluded that she could never use her right arm and hand for reaching, including overhead reaching, and found that Franklin's symptoms would be likely to increase if she was placed in a competitive work environment. (Tr. 491-492.) In addition it was Dr. Karazim-Horchos' opinion that Franklin would be likely to be absent from work more than three times a month. (Tr. 493.)

These treating source conclusions regarding the severity of Franklin's right arm impairments were further corroborated by an consulting examining physician, Dr. Jay Willner, who examined Franklin on August 18, 2014. (Tr. 400-405.) While Dr. Willner's examination led him to reach some conclusions that differed from Franklin's treating sources, on the question of whether Franklin could use her right, dominant arm to reach, there was unanimity among the physicians who

actually saw, treated or examined Franklin, with Dr. Willner finding based upon his examination that she could never use her dominant arm to reach. (Tr. 402.)

Arrayed against this body of treating and examining source evidence was a single thin reed, a non-examining medical source opinion rendered by Dr. Gerald Gryczko on August 18, 2014. (Tr. 90-98.) Although Dr. Gryzcko never treated or examined Franklin, he opined that she could perform light work. (Id.) While Dr. Gryzcko reached this conclusion, the doctor never specifically addressed the multiple contrary medical findings of severe impairment of Franklin's right arm beyond noting, without explanation, that Franklin experienced "impingements[] of rt. shoulder (dominant side)", (Tr. 96.), and observing that Franklin was "limited in upper extremities Right." (Tr. 95.)

It was against this medical and factual backdrop that the ALJ conducted a hearing considering Franklin's disability application on November 5, 2015. (Tr.36-89.) At this hearing. Ms. Franklin and a vocational expert appeared and testified. (Id.) The testimony of this vocational expert cast in sharp relief the importance of any findings relating to Franklin's right arm impairments. During the vocational expert's testimony, the expert identified a number of sedentary jobs which Franklin might be able to perform, but candidly acknowledged that none of those positions would be available to Franklin if she was unable to reach with her

right, dominant hand. (Tr. 87-8.) Thus, the vocational expert's testimony would seem to support a finding of disability if Franklin's right arm limitations were as severe as every treating and examining medical source stated.

Following this hearing, on December 21, 2015, the ALJ issued a decision denying Franklin's application for disability benefits. (Tr. 20-34.) In this decision, the ALJ first found that Franklin met the insured requirements of the Act, (Tr.25.), and then at Step 2 of the five step sequential analysis process that applies to Social Security disability claims concluded that Franklin experienced the following severe impairments: right shoulder disorder, including rotator cuff tear, status post-surgical repair. (Tr. 24.) At Steps 3 and 4 of this sequential analysis, the ALJ concluded that none of Franklin's impairments met a listing which would define her as *per se* disabled, (Tr. 26.), but also found that she could not return to her past employment due to these impairments. (Tr. 30.)

With the issue of Franklin's disability squarely focused on the degree of her right arm impairment, the ALJ then rejected in a cursory fashion all of the opinions of the treating and examining sources, who had uniformly found that Franklin was highly restricted in the use of her dominant arm to reach. (Tr. 29.) With respect to the treating sources, the ALJ simply and summarily stated that these opinions were not well-supported by the evidence. Likewise, the ALJ wholly discounted the

finding of Dr. Wellner, the examining consulting physician, on this score, noting that the doctor's opinion was based only upon his examination and did not reflect a long-term evaluation of Franklin's case. (Id.) Thus, the ALJ discounted both the medical opinions of treating sources, opinions based upon a long-term evaluation of Franklin's condition, as well as the opinion of the only non-treating examining source, Dr. Wellner, citing the lack of a long-term evaluation as the grounds for rejecting that final opinion.

Instead, the ALJ embraced the opinion of the only physician who never treated or examined Franklin, Dr. Gryzcko, and afforded that opinion substantial weight. (Id.) The ALJ reached this conclusion even though Dr. Gryzcko's opinion bore less empirical support than the opinions of these other treating and examining sources. Further, the ALJ gave this opinion substantial weight despite the fact that the doctor never specifically addressed the multiple findings of severe impairment of Franklin's right arm beyond noting, without explanation, that Franklin experienced "impingements[] of rt. shoulder (dominant side)", (Tr. 96.), and observing that Franklin was "limited in upper extremities Right." (Tr. 95.)

Having reached this conclusion at Step 5 of this sequential analysis, where the Commissioner bears the burden of proof, the ALJ found that there were significant jobs in the national economy which Franklin could perform. The ALJ

reached this conclusion even though the vocational expert whose testimony formed the basis of this conclusion candidly acknowledged that Franklin was not employable if she suffered from significant dominant arm restrictions. (Tr. 30.) The ALJ then denied Franklin's application for disability benefits. (Id.)

This appeal followed. (Doc. 1.) On appeal, Franklin attacks the ALJ's weighing of this medical opinion evidence, which gave the greatest weight to the opinion of the medical source who never saw Franklin while rejecting the opinions of multiple treating and examining medical sources. The parties have fully briefed this issue and this case is ripe for resolution. For the reasons set forth below, we find that the ALJ has not adequately explained the basis for the decision to reject the unanimous view of every treating, and examining source in favor of a non-treating non-examining doctor's opinion. Therefore, we will remand this case to the Commissioner for further proceedings consistent with this opinion.

## III. <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of the Administrative Law Judge and the Court</u>

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the Administrative Law Judge (ALJ) and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites

for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or

14

fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on

legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir.1997); <u>see also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ

as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## B. Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence

As in this case, Social Security appeals frequently entail review of an Administrative Law Judge's assessment and evaluation of competing medical evidence. This evaluation is conducted pursuant to clearly defined legal benchmarks. The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions. 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the

17

source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and, therefore, their opinions generally entitled to more weight. <u>See</u> 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); <u>see also</u> SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist;

and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).  Many of these factors, which focus on the extent and nature of the doctor–patient relationship, call for greater attention to be given to treating and examining source opinions in making a disability evaluation.

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators.  See SSR 96-5p, 1996 WL 374183 at *4.  As such, they do not express opinions; they make findings of fact that become part of the determination.  Id.  However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence.  As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6.  Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  SSR 96-6p, 1996 WL 374180 at *2.  In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

Oftentimes, as in this case, an ALJ must evaluate a number of medical opinions tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Yet, it is also well-settled that, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Further, there is a necessary corollary to these guiding legal principles. When a non-examining non-treating source offers an opinion on disability which does not adequately address or account for other countervailing medical evidence, and conflicts with treating source opinions, that opinion typically does not carry the requisite degree of weight to sustain the Commissioner's burden of proof. See e.g., Minner v. Astrue, Com'r, Soc. Sec. Admin., 741 F. Supp. 2d 591 (D. Del. 2010); Dougherty v. Astrue, 715 F. Supp. 2d 572 (D. Del. 2010); Gonzalez v. Astrue, 537 F. Supp. 2d 644, 647 (D. Del. 2008).

**C. <u>A Remand is Necessary Here to Further Evaluate the Decision to
Reject All Treating and Examining Source Opinions</u>**

Judged by these legal benchmarks we find that a remand is necessary here.
In this case we are presented with a striking circumstance. It appears that every
treating and examining source that considered Franklin's case found that she
suffered from severe right arm impairments. Furthermore, the vocational expert
who testified in this matter stated that, if these impairments were as restrictive as
the treating and examining sources described them to be, Franklin could not work.
Yet, Franklin's disability application has been denied based upon an opinion from
a non-examining, non-treating source who has never seen Franklin, and who
acknowledges her right arm impairment without analyzing it or addressing the
multiple medical opinions which indicate that this impairment may be disabling.
Further, in choosing to give significant weight to this less informed opinion, the
ALJ summarily discounted the more thorough and factually grounded views of
both the treating and examining doctors. The ALJ also did not address, or
acknowledge, the fact that this non-treating and non-examining physician did not
analyze the conflicting medical opinions in this case. The ALJ's reliance on this
non-treating, and non-examining source also neglected to address the fact that this
medical source, which the ALJ afforded substantial weight, seemed to
acknowledge, but not assess, Franklin's right arm impairment stating, without

explanation, that Franklin experienced "impingements[] of rt. shoulder (dominant side)", (Tr. 96.), and observing that Franklin was "limited in upper extremities Right." (Tr. 95.)

More is needed here before we can conclude that this decision is supported by substantial evidence. Recognizing that "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason,' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), we find that the ALJ's cursory treatment of these treating and examining medical opinions does not provide an adequate explanation for the ALJ's decision to reject the opinion of every doctor who actually treated or examined Franklin. Furthermore, mindful of the fact that when a non-examining non-treating source offers an opinion on disability which does not adequately address or account for other countervailing medical evidence, and conflicts with treating source opinions, that opinion typically does not provide the requisite degree of proof to sustain a decision denying benefits; see e.g., Minner v. Astrue, Com'r, Soc. Sec. Admin., 741 F. Supp. 2d 591 (D. Del. 2010); Dougherty v. Astrue, 715 F. Supp. 2d 572 (D. Del. 2010); Gonzalez v. Astrue, 537 F. Supp. 2d 644, 647 (D. Del. 2008), we find that

this non-treating, non-examining source opinion rendered in this case is insufficient to carry the Commissioner's burden of proof.

In our view, this non-treating, non-examining source opinion is flawed in several regards. First, that opinion does not address or acknowledge the countervailing medical opinion evidence supporting Franklin's claimed physical limitations, something that we believe should be done before the non-treating source opinion maybe given substantial weight. Further, that non-treating, non-examining source opinion seems flawed and incomplete in another material respect. That opinion acknowledges, without any meaningful analysis Franklin's right arm impairment stating, without explanation, that Franklin experienced "impingements[] of rt. shoulder (dominant side)", (Tr. 96.), and observing that Franklin was "limited in upper extremities Right." (Tr. 95.) Thus, the opinion confirms the existence of any impairment that other doctors find to be severe but provides no informed assessment of that impairment. Finally, this August 2014 non-treating source opinion necessarily cannot and does not address the subsequent material findings of severe right arm impairment made in the Fall of 2015 by Franklin's treating physician, Dr. Karazim-Horchos. The opinion, which was rendered on August 18, 2014, also cannot be viewed as reflecting any fully-

informed consideration of Dr. Wellner's examination findings, since those examination findings were also made on August 18, 2014.

Taken together, these shortcomings in the analysis of the medical evidence compel us to conclude that a remand is necessary in order to permit a more fulsome treatment of this medical evidence. Yet, while case law calls for a remand and further proceedings by the ALJ in this case assessing this claim and these medical opinions, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this opinion should be deemed as expressing an opinion on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

## IV. <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying this claim should be vacated, and this case should be remanded to the Commissioner to conduct a new administrative hearing pursuant

to 42 U.S.C. §405(g). IT IS FURTHER ORDERED that final judgment should be entered in favor of the plaintiff and against the Commissioner of Social Security.

An appropriate form of order follows.

So ordered this 9th day of August, 2017.


 s/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge